FILED & JUDGMENT ENTERED
Christine F. Winchester

April 17 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T. Beyer_
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

In re:

**MICHAEL DAVID POPP**
**MARY TERESSA SHERIDAN POPP,**

Debtors.

Chapter 7
Case No. 24-50179

## ORDER GRANTING TRUSTEE'S MOTION TO DISMISS

**THIS MATTER** is before the court on the Trustee's Motion to Dismiss Bankrutptcy [sic] Case (the "Motion to Dismiss") filed by the Chapter 7 Trustee on September 23, 2024, the joinder of the Bankruptcy Administrator for the Western District of North Carolina (the "BA"), and the Debtors' response to the Motion to Dismiss. The court held a hearing on the Motion to Dismiss on November 13, 2024 at which John W. Taylor, the Chapter 7 Trustee; Heather W. Culp, staff attorney for the BA; and Thomas C. Flippin, counsel for the Debtors appeared. For the reasons that follow, the court grants the Trustee's Motion to Dismiss.

## FINDINGS OF FACT

1. Michael David Popp (the "Male Debtor") and Mary Teressa Sheridan Popp (the "Female Debtor") (collectively, the "Debtors") commenced this case on May 16, 2024 by filing a voluntary petition under Chapter 7 of the Bankruptcy Code.

2. On August 16, 2022, one year and nine months before the Debtors filed this case, they sold their former residence located at 1875 NW 46th Lane, Ocala, Florida (the "Sale") and received approximately $123,421.63 in net sale proceeds (the "Proceeds").

3. In their initial Statement of Financial Affairs ("SOFA"), in response to question 18 ("Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?"), the Debtors answered "Yes" and disclosed the transfer of three vehicles, but they did not disclose the Sale or any transfers of the Proceeds.

4. Although the Debtors did not list the Sale in their schedules, the Trustee became aware of it independently.

5. On June 20, 2024, the Trustee conducted the meeting of creditors, during which he asked the Debtors about the Sale and requested copies of the Debtors' bank statements from August 2022 until the petition date.

6. On July 12, 2024, the Debtors produced to the Trustee the bank statements showing numerous large transactions shortly after the Sale.

7. On the same date, the Trustee emailed the Debtors' counsel requesting more information about the large transactions. The Trustee specifically requested that (as to each transaction of $1,000 or more) the Debtors (1) produce a detailed statement setting forth the nature and purpose of the transaction, (2) identify every party to the transaction, and (3) produce any and all documents that evidenced or related to the transaction including, but not limited to, contracts, invoices, receipts, checks, deposit tickets, and communications. The Trustee also requested all bank statements during the two-year period prior to the date of filing the petition that had not already been produced and excluded from his request transactions for deposits of Social Security and retirement benefits.

8. On July 15, 2024, the Debtors filed an amended SOFA, adding to their answer to question 18 the Sale and the $123,421.63 in proceeds they received. The amended SOFA does not disclose any substantial transfers of the Proceeds outside of the ordinary course of the Debtor's financial affairs.

9. On July 19, 2024, the Debtors produced copies of the same bank statements with handwritten notations next to some of the transactions along with a few documents regarding recreational vehicle and auto loans and two payments to collection agencies. As the Trustee described it, the July 19 production "was cryptic at best, did not provide the information requested and did not include the requested documentation." The Motion to Dismiss includes multiple examples of the deficiencies in the July 19 production, and the following examples are illustrative of the insufficiency of the production:

3

- next to a $7,000 cash withdrawal, the Debtors wrote "paid car off;"

- next to a $9,800 cash withdrawal, the Debtors wrote "paid credit card;"

- next to a $4,000 cash withdrawal, the Debtors wrote "cc paid;"

- next to a $2,300 cash withdrawal, the Debtors wrote "sister pay bk;"

- next to a $5,000 cash withdrawal, the Debtors wrote "mom pay bk;"

- next to a $5,000 cash withdrawal, the Debtors wrote "? Cash;"

- next to a $51,334.94 withdrawal by check, the Debtors wrote "bought camper;"

- next to a $43,000 withdrawal by check, the Debtors wrote "paid Bank OZK;" and

- next to a $21,400 deposit, no notations were made.

No documents were produced regarding any of these transactions.[1]

10. On July 25, 2024, the Trustee told the Debtors' counsel that he would consider the July 19 production their full response to his original request for additional information unless he was told otherwise. On August 2, 2024, the Trustee met with the Debtors' counsel, discussed the deficiencies, and expressed his frustration at the dearth of information regarding the transactions at issue. The Debtors' attorney promised to provide additional information.

11. On August 14, 2024, the Debtors provided yet another copy of the bank statements with some additional handwritten annotations. This production still failed to include a detailed statement regarding the nature and purpose of each

---

[1] As to the $43,000 withdrawal by check, the Trustee notes in his Motion to Dismiss that "[n]o documents were produced other than a printout showing the same information."

4

transaction in question, identify every party to the transaction, or provide documentation for nearly all the transactions.

12. Given his numerous unsuccessful attempts to obtain a satisfactory explanation from the Debtors, the Trustee filed the Motion to Dismiss.

13. In the Motion to Dismiss, the Trustee explains that the Debtors have failed to provide reasonably complete documents, information, and explanations as to what they did with $123,421.63 netted from the sale of their home within the two years prior to the bankruptcy filing. The Trustee alleges that the information and documentation provided to him by the Debtors is so incomplete and deficient that he is unable to administer the bankruptcy estate. On that basis, the Trustee asserts that there is cause to dismiss the case pursuant to 11 U.S.C. § 707(a).[2]

14. In the Debtors' response, they claim to have provided the "normal documents" to the Trustee. They state that their attorney and his paralegal spent nearly four hours reviewing their bank statements and attempting to answer the Trustee's questions. While they acknowledge that not every transaction has been identified, they believe they have accounted for the majority of the funds in question. The Debtors also explain that the Male Debtor suffers from several health issues, which have worsened and contributed to the bankruptcy filing. In addition, they note that they live in a recreational vehicle and do not have records of their expenditures because they moved multiple times during the period for which the Trustee requested documentation.

---

[2] Subsequent statutory references in this order are to Title 11 unless otherwise indicated.

5

15. The BA's joinder, which supports the Motion to Dismiss, points out that the Debtors have failed to comply with their duties under the Bankruptcy Code. It highlights that the Debtors transferred assets, paid debts to insiders, and failed to disclose their financial affairs. The BA concludes that, under the circumstances, dismissal is the only appropriate remedy.

16. The court conducted a hearing on the Motion to Dismiss on November 13, 2024. Although the Motion to Dismiss had been pending for over two months, the day before the hearing, Debtors' counsel emailed the Trustee and the attorney for the BA. In the email, Debtors' counsel stated that he had figured out what happened with the cash withdrawals from August and September 2022. He also provided further details about the transactions in question, including a spreadsheet describing some of the transactions over $1,000 and a few supporting documents.

17. Both Debtors testified at the hearing. Their testimony focused on the nature of the transactions and provided some of the information requested by the Trustee.

18. The Male Debtor appeared frail and took some time to respond to questions but was able to answer many. For instance, when asked about the names and addresses of the mother and sister referenced in the "mom pay bk" and "sister pay bk" notations, he had no difficulty providing that information. The Male Debtor was unsure whether he had shared these details with his attorney. He admitted not sharing other details with his attorney but could not explain why he had not done so. He also could not explain why the transactions were omitted from his schedules.

6

Overall, the court found parts of the Male Debtor's testimony to be confusing and parts to be insightful.

19.     In contrast, the Female Debtor was able to recall the details of many of the transactions with greater specificity. Nevertheless, due to the discrepancies between the annotated bank statements, her testimony, and the transactions about which she was uncertain, the court did not gain a full understanding of the nature of the transactions or the disposition of the funds from the sale of the home by the conclusion of the hearing.

## CONCLUSIONS OF LAW

20.     "The court may dismiss" a Chapter 7 case "only after notice and a hearing and only for cause." § 707(a). The examples of cause listed in the statute are "(1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee." Id. " 'Cause' is an open-ended term. It is not defined in § 707(a), and the examples provided are illustrative rather than exhaustive." Janvey v. Romero, 883 F.3d 406, 411 (4th Cir. 2018) (citations omitted). "Bankruptcy courts are therefore left to determine case by case what constitutes valid cause for dismissal of a Chapter 7 bankruptcy petition." Id.

7

Case 24-50179    Doc 45    Filed 04/17/25    Entered 04/17/25 16:53:43    Desc Main
Document    Page 8 of 15

21. Cause for dismissal under section 707(a) can include a debtor's lack of good faith as "evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." In re Stancil, No. 12-08950-8, 2014 WL 335349, at *3 (Bankr. E.D.N.C. Jan. 30, 2014) (quoting McDow v. Smith, 295 B.R. 69, 74 (E.D.Va. 2003)). Courts consider many factors to determine lack of good faith, including whether (1) the debtor paid debts to insiders, (2) transferred assets, and (3) failed to make a candid and full disclosure. Id. at *3-4 (citing In re Marino, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008)).

22. A debtor's failure to comply with his duties under the Bankruptcy Code is also cause to dismiss if such failure renders the trustee unable to administer the bankruptcy estate. In re Moses, 792 F. Supp. 529, 532 (E.D. Mich. 1992); see also In re Price, 211 B.R. 170, 172 (Bankr. M.D. Pa. 1997) (denying a motion to dismiss because the United States Trustee did not show that the debtors' failure to list the dates certain claims were incurred interfered with the administration of their estate).

23. Here, the Debtors failed to comply with their duties. Bankruptcy law and this court's Local Rules impose several duties on Chapter 7 debtors, including:

- filing accurate and complete schedules under penalty of perjury (§ 521(a)(1); 28 U.S.C. § 1746; FED. R. BANKR. P. 1008);

- surrendering to the trustee any recorded information, including documents, records, and papers, relating to property of the estate (§ 521(a)(4); Local Rule 4002-1(c)(1)); and

- cooperating with the trustee as necessary to enable the trustee to perform the trustee's duties (§ 521(a)(3); FED. R. BANKR. P. 4002(a)(4); Local Rule 4002-1(c)(1)).

8

24. The Debtors have failed to file accurate and complete schedules. Question 18 of the SOFA states: "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?"

25. Both the SOFA and the Bankruptcy Code lack a specific definition for the phrase "in the ordinary course of business or financial affairs." <u>McDermott v. Bruce (In re Bruce)</u>, Ch. 7 Case No. 15-13536, Adv. Nos. 15-1117, 15-1125, 2019 WL 11639533, at *9 (Bankr. S.D. Ohio Sept. 16, 2019). In bankruptcy cases, the phrase means "the normal, routine or customary transactions or practices in which a debtor engages." <u>Id.</u> (citing <u>Stamat v. Neary</u>, 635 F.3d 974, 980 (7th Cir. 2011)).

26. In their original SOFA, the Debtors failed to disclose the Sale or any transfers of the Proceeds. While the Debtors filed an amended SOFA that includes the Sale and a $123,421.63 "payout for the home sell," the Debtors have not disclosed their substantial and outside the ordinary course transfers of the Proceeds. The Motion to Dismiss points out several transfers that qualify as outside of the ordinary course that should be included in the Debtors' SOFA, such as using $7,000 to pay off a car loan in August 2022, spending $51,334.94 to buy a camper in September 2022, and paying $43,000 to "Bank OZK" in November 2022.

27. The Debtors have also failed to surrender information and documentation relating to the Proceeds and transfers in question to the Trustee and to sufficiently cooperate with the Trustee's multiple requests to obtain such information and documentation. " 'Cooperate' is a broad term, indeed, and must be

9

construed that whenever the trustee calls upon the debtor for assistance in the performance of his duties, the debtor is required to respond, at least if the request is not unreasonable." 4 COLLIER ON BANKRUPTCY ¶ 521.15[5] (16th ed. 2024). The "cooperation" requirements of section 521(a)(3) and Bankruptcy Rule 4002(a)(4) have been held to obligate debtors to provide information, including explanations, to trustees. In re Auld, 561 B.R. 512, 521 (B.A.P. 10th Cir. 2017). Put simply, debtors are obligated to comply "with any reasonable request that will assist the trustee in performing the trustee's duties." In re Moran, No. 10-35955, 2013 WL 4519608, at *3 (Bankr. S.D. Tex. Aug. 26, 2013). The Trustee's July 12, 2024 request for additional information about the transfers was clear and reasonable under the circumstances. In response, the Debtors produced bank statements with cryptic handwritten notes in the margins (that were largely meaningless to the Trustee) and some additional documentation but ultimately failed to provide most of the information and documentation requested by the Trustee.

28.  Furthermore, the Debtors' failure to comply with their duties was substantial enough to render the Trustee unable to administer the estate. The Trustee has a duty to gather property of the estate, § 704(a)(1), to investigate the debtor's finances, § 704(a)(4), and to maximize distribution to creditors, In re Melenyzer, 140 B.R. 143, 154 (Bankr. W.D. Tex. 1992) (citations omitted). The Trustee's Motion to Dismiss itemizes $137,034.94 in transfers gleaned from bank statements over the two years preceding the filing that the Debtors failed to disclose or explain in a manner that would allow the Trustee to verify or dispute the recipient

10

and/or purpose of the transfers. This is not a trivial sum. As explained in Bruce, "the completeness and veracity of the debtor's statements are essential to the successful administration of the Bankruptcy Code." 2019 WL 11639533, at *8 (citing In re Beanbouef, 966 F.2d 174, 178 (5th Cir. 1992)).

29. The Debtors' failure to comply with the Trustee's reasonable requests for information and documentation has significantly hindered his ability to investigate their financial affairs and maximize distribution to creditors and, ultimately, rendered him unable to properly administer their bankruptcy estate.

30. Moreover, the Debtors had more than enough time to cure their deficient compliance. The court held the November 13, 2024 hearing almost six months after the case commenced, four months after the Trustee's July 12, 2024 request for information, and two months after the Trustee filed the Motion to Dismiss.

31. During the hearing on the Motion to Dismiss, the Trustee asked the Female Debtor why the names, addresses, and other details related to the transactions were not included in the July 19 or August 14 productions as requested. The Female Debtor explained that her attorney's paralegal added the written details to the bank statements based on verbal information she provided. She could not explain, however, why some of the information contradicted her testimony or recall what had been specifically requested by the paralegal or what she had provided. The Trustee also asked why the Debtors did not produce some documents until the eve of the hearing. The Female Debtor said her attorney only requested certain documents a few days earlier. She added that while she understood that she was supposed to

11

provide information, she did not know exactly what was needed, which is why she hired an attorney. Regarding the Male Debtor's testimony, while it was clear he was in pain and very uncomfortable during the hearing, he was still able to be sworn in, take the stand, and respond to questions with enough clarity for the court to gain a better understanding of the transactions at issue.

32. During his closing argument, the court asked the Debtors' counsel why the information had to be gathered in court when he could have asked his clients these same questions outside of the hearing. He explained that he had difficulty working with the Debtors in his office due to the Male Debtor's poor health. He stated that he provided the information he received from the Debtors to the Trustee and suggested that relaying the information fulfilled his responsibility. He acknowledged that he did not push the Debtors for additional information despite knowing the productions were deficient. He argued that it was not his duty to interpret the Debtors' answers but ultimately acknowledged that he should have pressed them for additional details. The court agrees with this conclusion. The Trustee's requests were clear, and a cursory review of the Debtors' bank statements and the vague notations in the margins should have prompted the Debtors' attorney to schedule a follow-up meeting with the Debtors to better understand the nature of the transactions in question. It is the Debtors' responsibility to review their schedules and statements for accuracy and to comply with their bankruptcy duties. In re Jakovljevic-Ostojic, 517 B.R. 119, 128 (Bankr. N. D. Ill. 2014) ("A debtor may not shirk its responsibility to determine what is or is not appropriately put forth on its schedules."); In re Stone,

12

504 B.R. 908, 913 (Bankr. C. D. Ill. 2014) ("Debtors are personally responsible for the accuracy of the information contained in their schedules whether or not they have been assisted by counsel.") (citations omitted); see also Davis, Mannix & McGrath v. Fawell (In re Fawell), Ch. 7 Case No. 98 B 01274, Adv. No. 98 A 01306, 1999 WL 569449, at *14 (Bankr. N.D. Ill. July 26, 1999) ("The Debtor cannot rely on the advice of counsel defense regarding errors in the Schedules where the Debtor has declared under penalty of perjury that he has read the Schedules, and to the best of his knowledge they were true and correct.") (citations omitted).

33. The Debtors' counsel, however, is not merely a conduit for the information provided by her clients. She must critically assess whether the information raises further questions and further investigate any inconsistencies or missing details. For instance, the Debtors' counsel included the Debtors' former residence in Ocala, Florida in their initial SOFA, so he should have further investigated the possibility of a sale and sale proceeds. Similarly, it should have been obvious to the Debtors' counsel (and likely was) that the limited information provided in response to the Trustee's requests was insufficient.

34. The Debtors' counsel also suggested that some of the blame lay with the Trustee for not following his typical practice of emailing a detailed list of problems with the July 19 production. "It is not enough to simply give the Trustee access to piles of documents and force him to sort through the information." In re Royce Homes, LP, No. 09-32467-H4-7, 2009 WL 3052439, at *1 (Bankr. S.D. Tex. Sept. 22, 2009). Here, the behavior of the Debtors' counsel was even worse. Instead of piles of

13

documents, he gave the Trustee a few and expected him to not only sort through them but also repeatedly ask for more. "Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." Bruce, 2019 WL 11639533, at *9–10 (quoting In re Hamo, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999)). If the Debtors were deliberately withholding information it would be a different matter; however, based on their testimony during the hearing on the Motion to Dismiss, they appeared truthful, yet confused, and were able to provide details for most (though not all) of the transactions in question.

35. While both the attorney for the BA and the Trustee acknowledged that the Debtors provided many answers during the hearing, the fact remains that the Debtors have not sufficiently amended their schedules and SOFA, leaving the Trustee without the necessary information to properly administer the estate. Although the court does not conclude that the Debtors lack good faith, it concludes that their failure to comply with their duties has hindered the Trustee's ability to fulfill his. As a result, cause exists to dismiss this case.

36. Finally, remedies other than dismissal appear to be futile or unduly burdensome to the Trustee. In addition to dismissal under section 707(a), a debtor's failure to cooperate with the Chapter 7 trustee can result in denial of discharge, § 727 (a), an order compelling the production of documents, In re Farmer, 237 B.R. 210, 212–13 (Bankr. M.D. Fla. 1999), and civil contempt penalties to compensate the trustee or compel the debtor's compliance, see In re Broughton, No. 16-cv-302, 2018 U.S. Dist. LEXIS 171118, at *7 (E.D.N.C. Oct. 2, 2018) (discussing civil contempt as

14

a result of a debtor's failure to cooperate). The Debtors' response to the Trustee's Motion to Dismiss is that they have done the best they can for various reasons. If the threat of dismissal did not prompt additional disclosures and adequate cooperation, it seems doubtful that a less severe sanction would be effective. Furthermore, compelling debtors to meet their existing obligations and denying their discharge would place an undue burden on the trustee, requiring significant time and resources that would ultimately reduce any distribution to creditors or require the trustee to finance litigation in a no asset case.

## CONCLUSION

The Debtors failed to comply with their duties of disclosure and cooperation in this case. As a result, the Trustee was unable to perform his duties. Accordingly, the court finds that there is cause to dismiss the case pursuant to 11 U.S.C. § 707(a), the Trustee's Motion to Dismiss is hereby **GRANTED,** and the case is **DISMISSED**.

**SO ORDERED**.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court